# EXHIBIT 1

**INDEX NO.**

**SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK**

| | | |
|---|---|---|
| STUART GARBER, derivatively, on behalf of IAC/INTERACTIVECORP., | ) ) ) | |
| Plaintiff, | ) ) ) ) | IAS Part: Index No. |
| vs. | ) ) ) | |
| BARRY DILLER; VICTOR A. KAUFMAN; JULIUS GENACHOWSKI; DARA KHOSROWSHAHI; RICHARD N. BARTON; EDGAR BRONFMAN, JR.; DONALD R. KEOUGH; MARIE-JOSEE KRAVIS; GEN. H. NORMAN SCHWARZKOPF; ALAN G. SPOON; DIANE VON FURSTENBERG, STEVEN RATTNER, and WILLIAM SEVERANCE, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) ) | |
| -and- | ) ) ) | |
| IAC/INTERACTIVECORP, a Delaware Corporation, | ) ) ) ) | |
| Nominal Defendant. | ) ) | |

## SUMMONS AND COMPLAINT

**BULL & LIFSHITZ, LLP**
**Attorneys For Plaintiffs**
**18 East 41st Street**
**New York, New York 10018**
**(212) 213-6222**

## SUPREME COURT OF THE STATE OF NEW YORK
### NEW YORK COUNTY

| | |
|---|---|
| STUART GARBER, derivatively, on behalf of IAC/INTERACTIVECORP., )<br><br>Plaintiff, )<br><br>vs. )<br><br>BARRY DILLER; VICTOR A. KAUFMAN; JULIUS GENACHOWSKI; DARA KHOSROWSHAHI; RICHARD N. BARTON; EDGAR BRONFMAN, JR.; DONALD R. KEOUGH; MARIE-JOSEE KRAVIS;  GEN. H. NORMAN SCHWARZKOPF; ALAN G. SPOON; DIANE VON FURSTENBERG; STEVEN RATTNER and WILLIAM SEVERANCE, )<br><br>Defendants, )<br><br>-and- )<br><br>IAC/INTERACTIVECORP, a Delaware Corporation, )<br><br>Nominal Defendant. ) | Index No.:<br>Date Filed:<br><br>Plaintiff Designates<br>NEW YORK COUNTY<br>as the place of trial   **04603416**<br><br>SUMMONS<br><br>Plaintiff's Residence:<br>1750 East 14th Street<br>Brooklyn, NY |

**FILED**
*OCT. 18, 2004*
*NEW YORK*
*COUNTY CLERKS OFFICE*

To the above-named Defendants:

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to

serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice

of your appearance, on the Plaintiffs' Attorneys within TWENTY (20) days after service of this

summons, exclusive of the day of service (or within THIRTY (30) days the service is complete if

this summons is not personally delivered to you within the State of New York); and

in case of your failure to appear or answer, judgment will be taken against you by default of the

relief demanded herein.

Dated: New York, New York
October 15, 2004

BULL & LIFSHITZ, LLP

By:_____
Peter D. Bull
18 East 41ˢᵗ Street
New York, New York 10017
(212) 213-6222

DEFENDANTS' ADDRESSES:

IAC/INTERACTIVECORP
152 West 57th Street
New York, NY 10019

BARRY DILLER
c/o IAC/INTERACTIVECORP
152 West 57th Street
New York, NY 10019

VICTOR A. KAUFMAN
c/o IAC/INTERACTIVECORP
152 West 57th Street
New York, NY 10019

JULIUS GENACHOWSKI
c/o IAC/INTERACTIVECORP
152 West 57th Street
New York, NY 10019

DARA KHOSROWSHAHI
c/o IAC/INTERACTIVECORP
152 West 57th Street
New York, NY 10019

RICHARD N. BARTON
c/o IAC/INTERACTIVECORP
152 West 57th Street

2

New York, NY 10019

EDGAR BRONFMAN, JR.
c/o IAC/INTERACTIVECORP
152 West 57th Street
New York, NY 10019

DONALD R. KEOUGH
c/o IAC/INTERACTIVECORP
152 West 57th Street
New York, NY 10019

MARIE-JOSEE KRAVIS
c/o IAC/INTERACTIVECORP
152 West 57th Street
New York, NY 10019

GEN. H. NORMAN SCHWARZKOPF
c/o IAC/INTERACTIVECORP
152 West 57th Street
New York, NY 10019

ALAN G. SPOON
c/o IAC/INTERACTIVECORP
152 West 57th Street
New York, NY 10019

DIANE VON FURSTENBERG
c/o IAC/INTERACTIVECORP
152 West 57th Street
New York, NY 10019

STEVEN RATTNER
c/o IAC/INTERACTIVECORP
152 West 57th Street
New York, NY 10019

WILLIAM SEVERANCE
c/o IAC/INTERACTIVECORP
152 West 57th Street
New York, NY 10019

## SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

| | |
|---|---|
| STUART GARBER, derivatively, on behalf of IAC/INTERACTIVECORP., )<br><br>Plaintiff, )<br><br>vs. )<br><br>BARRY DILLER; VICTOR A. KAUFMAN; JULIUS GENACHOWSKI; DARA KHOSROWSHAHI; RICHARD N. BARTON; EDGAR BRONFMAN, JR.; DONALD R. KEOUGH; MARIE-JOSEE KRAVIS;  GEN. H. NORMAN SCHWARZKOPF; ALAN G. SPOON; DIANE VON FURSTENBERG; STEVEN RATTNER and WILLIAM SEVERANCE, )<br><br>Defendants, )<br><br>-and- )<br><br>IAC/INTERACTIVECORP, a Delaware Corporation, )<br><br>Nominal Defendant. ) | IAS Part:<br>Index No.<br><br><br><br>04603416 |

## STOCKHOLDER'S DERIVATIVE COMPLAINT

Plaintiff, by his attorneys, brings this Action derivatively on behalf of nominal defendant IAC/Interactive Corporation ("IAC", the "Company" or "IAC/InterActiveCorp) and alleges upon personal knowledge as to his own acts and as to all other matters upon information and belief, as follows:

## INTRODUCTION

1.    This is a stockholder's derivative action brought by plaintiff who is now and at all

relevant times has been a stockholder of IAC.

2.     The individual defendants identified herein were or are the members of IAC's Board of Directors and/or have been at all times relevant hereto high-level executives of the Company. They are highly compensated individuals, and benefit from compensation plans which provide them with incentives to remain on the Board and/or the upper echelons of the Company (and not antagonize management) and provide further incentives to maintain a high price for IAC's stock.

3.     Although made up of many different segments, IAC's business is centered around providing Web-based consumer services in such diverse fields as lending, personal relationships and travel.  Throughout the period commencing in 1999, the Company was engaged in a pronounced growth strategy which entailed acquiring other businesses through the use of its common stock. Thus, at all times herein, it was imperative for the Company to maintain a high price for its common stock in order to proceed with its business aims.

4.     At all times herein, the bulk of the Company's business was focused upon the travel industry. In this regard, during the Spring of 2003, the Company acquired complete ownership over Expedia.com ("Expedia") and Hotels.com, ("Hotels"), highly publicized internet-based service providers which assist consumers in the purchase of airline tickets, making hotel reservations, renting automobiles and other travel-related services.  As a function of these services, Expedia and Hotels, respectively, were given allocations of airline tickets and hotel rooms by various primary service providers for eventual distribution to ultimate consumers.

5.     At all times relevant to this action, the Defendants portrayed IAC to the investment community as a company poised for growth in revenues and extolled the Company's continued growth strategy and rising earnings.  Nevertheless, from the Spring of 2003 through early August

2

of 2004, the Company, its officers and directors knew or should have known that these statements were inaccurate . In fact, despite the positive pronouncements during this period, there were a number of undisclosed negative trends effecting the Company's business operations, to wit: a) the Company's Exepdia and Hotels businesses were misrepresenting the non-availability of hotel reservations to potential customers when such reservations would result in lowered profits for the Company, b) the Company was charging undisclosed service fees to consumers, c) certain hotel chains and airlines had retaliated against the Company's policies by intentionally decreasing the number of rooms available to Expedia and Hotels customers, and d) the Company's hotel and airline providers were starting their own direct booking sites which would by-pass the Company's web-sites, thus seriously adversely effecting the Company's market share of Web-based travel services.

6.      Moreover, aware of such business trends, certain Company executives and board members identified below, were given virtually unimpeded power to trade in the Company's common shares notwithstanding their access to the above-referenced negative information. As a result, between March of 2003 and August of 2004, these individuals, with knowledge of the above-referenced adverse business trends, were allowed to sell an astonishing total of almost 7 million shares of IAC stock, generating gross proceeds of $227,572,812.

7.      Finally, on August 3, 2004, the Company was forced to admit that its second quarter of 2004 revenues fell by 24% when compared to the second quarter of 2003 and, in a subsequent conference call, the Company's Chief Executive Officer and Chairman of the Board of Directors admitted that prior rosy growth projections would have to be extended for a period as long as several years.

8.      The above-referenced disclosures caused the value of IAC common stock to

3

experience an extreme and dramatic decline.  As subsequent news articles revealed the true state of the Company's business condition as well as its questionable business practices, several class action law suits have been filed against both the Company and several of its officers and directors, charging the Company and these individuals with intentionally and/or recklessly misleading the investing public as well as insider trading.  Nevertheless, at this time, no action as been taken by the Company, through its Board of Directors, to curtail the practices enumerated herein or to hold the Defendants responsible for their actions in both misleading the public and conducting illegal insider trading notwithstanding the damage done to the Company's economic condition and reputation.

## PARTIES

### The Plaintiff

9.      Plaintiff Stuart Garber is and, at the times of the wrongs complained of herein, was an owner of JAC common stock.

### The Nominal Defendant

10.     Nominal Defendant IAC/InteractiveCorp is a Delaware corporation which has its headquarters at 152 57th Street, New York, New York.  Previously known as USA Interactive, the Company concentrates on developing and acquiring businesses which conduct interactive consumer services.  The Company is divided into several discrete albeit somewhat synergistic divisions which include IAC Travel (which includes Expedia, Hotels.com, Hotwire, Interval International and TV Travel Shop); Ticketmaster (which includes such diverse businesses as Match.com; Lending Tree, Precision Response Corporation) and IC Local and Media Services (which includes the widely-used Citysearch Web-based travel and city guides, Evite, Entertainment Publications and TripAdvisor, Inc.).  Additionally, the Company holds interests in a variety of similar endeavors such as National

4

Leisure Group.  Except where otherwise specifically indicated, the term "Defendants" does not refer to or include nominal defendant IAC.

## The Director Defendants

11.     Defendant Barry Diller ("Diller"), has been a director and the Chairman and Chief Executive Officer of IAC/InterActiveCorp (or its predecessors) since August 1995.  He was Chairman of the Board and Chief Executive Officer of QVC, Inc. from December 1992 through December 1994.  From 1984 to 1992, Diller served as the Chairman of the Board and Chief Executive Officer of Fox, Inc.  Prior to joining Fox, Inc., Diller served for 10 years as Chairman of the Board and Chief Executive Officer of Paramount Pictures Corporation.  Diller currently serves as a director of Expedia, Inc., Hotels.com, The Washington Post Company and The Coca-Cola Company.  He also serves on the Board of the Museum of Television and Radio, the New York Public Library, Conservation International and 13/WNET.  Additionally, Diller is a member of the Board of Councilors for the University of Southern California's School of Cinema-Television, the New York University Board of Trustees, the Tisch School of the Arts Dean's Council and the Executive Board for the Medical Sciences of University of California, Los Angeles.

12.     Defendant Victor A. Kaufman ("Kaufman") has been a director of IAC/InterActive Corp since December 1996 and has been Vice Chairman of IAC/InterActiveCorp since October 1999. Previously, Mr. Kaufman served in the Office of the Chairman for IAC/InterActiveCorp since January 1997 and as Chief Financial Officer of IAC/InterActiveCorp since November 1997.  Prior to that time, he served as Chairman and Chief Executive Officer of Savoy Pictures Entertainment, Inc. since March 1992 and as a director of Savoy since February 1992.  Kaufman was the founding Chairman and Chief Executive Officer of Tri-Star Pictures, Inc. from 1983 until December 1987,

5

at which time he became President and Chief Executive Officer of Tri-Star's successor company, Columbia Pictures Entertainment, Inc. He resigned from these positions at the end of 1989 following the acquisition of Columbia by Sony USA, Inc. Kaufman joined Columbia in 1974 and served in a variety of senior positions at Columbia and its affiliates prior to the founding of Tri-Star. Kaufman also serves as a director of Hotels.com and Expedia, Inc.

13.     Defendant Richard N. Barton ("Barton"), has been a director of IAC/InterActiveCorp since February 2003. Barton founded Expedia, Inc. He has served as the President and Chief Executive Officer and a director of Expedia from September 1999 through March 2003. Prior to that, Barton worked from 1991 to 1994 in various product management roles for Microsoft on the Windows 95, Windows 3.1, MS-DOS 6 and MS-DOS 5 operating systems. Prior to joining Microsoft, he worked as a strategy consultant. He is currently on the board of directors of NetFlix and AtomShockwave, Inc.

14.     Defendant Edgar Bronfman, Jr., ("Bronfman"), has been a director of IAC/InterActiveCorp since February 1998. He is Chief Executive Officer of Lexa Partners LLC and a partner of Accretive Technologies LLC. Bronfman also serves as Vice Chairman of the Vivendi Board of Directors and as Co-Chairman of A&G Group Limited. Bronfman was appointed Executive Vice Chairman of Vivendi in December 2000 and he resigned from his position as an executive and officer of Vivendi on March 31, 2002. Prior to December 2000, he had been President and Chief Executive Officer of The Seagram Company Ltd., a post he held since June 1994 and from 1989 to June 1994 he was President and Chief Operating Officer of Seagram. Bronfman is a director of Vivendi, Equitant, Inc., Fandango and NewRoads and a member of the Board of New York University Medical Center and the Board of Governors of The Joseph H. Lauder Institute of

6

Management & International Studies at the University of Pennsylvania.

15.   Defendant Donald R. Keough ("Keough") has been a director of IAC/InterActiveCorp since September 1998. He is Chairman of the Board of Allen & Company Incorporated, a New York investment banking firm. He was elected to that position in April 1993. Keough retired as President, Chief Operating Officer and a director of The Coca-Cola Company in April 1993. Keough serves as a director on the boards of The Washington Post Company, McDonald's Corporation and YankeeNets, LLC. He is a past chairman of the board of trustees of the University of Notre Dame and a trustee of several other educational institutions. He also serves on the boards of a number of national charitable and civic organizations.

16.   Defendant Marie-Josee Kravis ("Kravis") has been a director of IAC/InterActiveCorp since March 2001. She is a Senior Fellow of the Hudson Institute as well as the Council on Foreign Relations. Kravis has been associated with the Hudson Institute since 1973 when she joined as a senior economist. She held a number of positions with the Hudson Institute before being elected executive director of the Hudson Institute of Canada in 1976. She returned to the U.S. and became a Senior Fellow of the Institute in 1994. Kravis received an honorary doctorate of law at the University of Windsor and Laurentian University. She obtained a master's degree in economics from the University of Ottawa. She was a member of the Quebec government's Consultative Committee on Financial Institutions, Vice Chair of the federal Royal Commission on National Passenger Transportation, member of the Canadian government's Communications Research Advisory Board and the Canadian Council for Research on Social Science and the Humanities. Kravis is also a director of Vivendi Universal S.A., Hollinger International Inc. and Ford Motor Company.

17.   Defendant Steven Rattner ("Rattner") has been a director of IAC since April 2004.

7

He is a Managing Principal of Quadrangle Group LLC, a private investment firm. Prior to the formation of Quadrangle in March 2000, Mr. Rattner served as Deputy Chairman and Deputy Chief Executive Officer of Lazard Frères & Co., which he joined as a General Partner in 1989 and where he founded the firm's Media and Communications Group. Prior to joining Lazard Frères & Co., Rattner was a Managing Director at Morgan Stanley, where he also founded the firm's Media and Communications Group. Rattner is currently a member of the board of directors of Cablevision Systems Corporation. Rattner also serves as Chairman of the boards of directors and as trustee of a number of national and local charitable, civic and educational organizations and institutions.

18.    General H. Norman Schwarzkopf ("Schwarzkopf") has been a director of IAC/InterActiveCorp since December 1996. He previously had served as a director of Home Shopping Network since May 1996. Since his retirement from the military in August 1991, General Schwarzkopf has been an author, a lecturer and a participant in several television specials and works with NBC as a consultant. From August 1990 to August 1991, he served as Commander-in-Chief, United States Central Command and Commander of Operations, Desert Shield and Desert Storm. Schwarzkopf had 35 years of service with the military. He is also on the Nature Conservancy's President's Conservation Council, Chairman of the Starbright Capital Campaign, co-founder of the Boggy Creek Gang, a member of the University of Richmond Board of Trustees, and serves on the Boards of Directors of Remington Arms Company and Cap CURE, Association for the Cure of Cancer of the Prostate.

19.    Defendant Alan Spoon ("Spoon") has been a director of IAC/InterActiveCorp since February 2003. Since May 2000, Spoon has been managing general partner at Polaris Venture Partners. Spoon was Chief Operating Officer and a director of The Washington Post Company from

8

May 1991 through March 2000 and served as President from September 1993 through March 2000. Prior to that, he held a wide variety of positions at The Washington Post Company, including President of Newsweek from September 1989 to May 1991. Spoon is also a director of Human Genome Sciences, Inc., International Data Group and Danaher Corporation, and he served as a director of Ticketmaster from December 1997 through the first part of January 2003. In his not-for-profit affiliations, Spoon is a Regent of the Smithsonian Institution and a member of the MIT Corporation.

20.     Defendant Diane Von Furstenberg ("Furstenberg") has been a director of IAC/InterActiveCorp since March 1999. She is a designer and the founder of Diane Von Furstenberg Studio L.P. and has served as its Chairman since August 1995. Previously, she was the Chairman of Diane Von Furstenberg Studio, which she also founded. Diller and Furstenberg are married.

21.     Unless otherwise denominated, Defendants Diller, Kaufman, Barton, Bronfman, Keough, Kravis, Schwarzkopf, Spoon, Furstenberg and Rattner shall be referred to collectively as the Director Defendants.

**The Executive Defendants**

22.     Defendant Dara Khosrowshahi ("Khosrowshahi") has been Executive Vice President and Chief Financial Officer of IAC/InterActiveCorp since January 2002. In this capacity, he oversees all financial matters for the Company. Khosrowshahi also serves in the Office of the Chairman. Khosrowshahi was previously IAC's Executive Vice President of Operations and Strategic Planning since August 2000. From August 1999 to July 2000, Khosrowshahi served as President, USA Networks Interactive, where he oversaw management, operations and strategic

planning of the Company's interactive services division.  Khosrowshahi first joined IAC in 1998 as Vice President of Strategic Planning.  He was promoted to Senior Vice President in May 1999.  Prior to joining the Company, Khosrowshahi worked at Allen & Company Incorporated from 1991 to 1998 where he served as Vice President from 1995 to 1998.

      23.    Defendant Julius Genachowski ("Genachowski") became Executive Vice President and Chief of Business Operations of IAC/InterActiveCorp in June 2003.  Genachowski also serves in the Office of the Chairman.  Prior to his promotion, Genachowski served as the Company's Executive Vice President and General Counsel since February 2002.  Before that, he was Senior Vice President and General Counsel since July 2000, and had also served as Vice President, Corporate Development, at Ticketmaster Online-Citysearch, Inc.  He joined the Company in late 1997 as General Counsel and Senior Vice President, Business Development, for USA Broadcasting, IAC's former television station group.  Prior to joining the Company, Genachowski served as Chief Counsel to the Chairman of the Federal Communications Commission.  Genachowski served as a law clerk to Supreme Court Justice David H. Souter and, before that, to retired Supreme Court Justice William J. Brennan, Jr.  He was also a law clerk to Chief Judge Abner J. Mikva of the U.S. Court of Appeals for the D.C. Circuit.  Genachowski has worked in Congress on the staff of the Select Committee investigating the Iran-Contra Affair, and for then-U.S. Representative, now Senator, Charles E. Schumer.

      24.    Defendant William Severance ("Severance") was a Vice President of IAC/InterActiveCorp between May of 2003 and February of 2004.

      25.    Unless otherwise denominated, Defendants Genachowski, Khosrowshahi, Severance, Diller and Kaufman shall also be designated as the Executive Defendants

## DUTIES AND OBLIGATIONS OF DIRECTORS

26.     At all times herein, each of the Director Defendants and Executive Defendants owes and owed fiduciary duties to the Company and its shareholders in connection with its operations, management and direction.

27.     To discharge these duties, defendants were required, among other things to:

(a)     Manage, conduct, supervise and direct the business affairs of IAC in accordance with applicable state and federal law and rules and regulations;

(b)     Neither violate nor permit any officer, director, agent or employee of IAC to violate applicable state laws, federal laws, rules, regulations;

©)     Establish and maintain systematic and accurate internal controls and procedures of the business and affairs of IAC and procedures for the reporting of the business and affairs to the Board of Directors, and periodically investigate, or cause independent investigation to be made of, said books and records;

(d)     Maintain and implement an adequate and functioning system of internal financial and accounting controls, such that IAC's financial statements and information provided to the investing public would be accurate;

(e)     Exercise supervision over the public statements made and/or issued to the securities markets relating to IAC;

(f)     Remain informed as to the status of IAC's business, conditions, practices and operations, and upon receipt of notice or information of imprudent or unsound practices or operations, make reasonable inquiry in connection therewith, and take steps to correct such practices or operations and make such disclosures as are necessary to comply with state and federal securities

11

laws;

       (g)    Supervise the preparation and filing of any audits, reports or other information required by law of IAC, and examine and evaluate any reports of examinations, audits or other financial information concerning the financial affairs of IAC, and make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above;.and

       (h)    Maintain adequate internal controls and monitoring in order to ensure that Company insiders were not able to trade their Company stock based upon confidential and proprietary information obtained by way of their positions with IAC.

    28.    Notwithstanding the above-referenced duties, Defendants breached their fiduciary duties by, among other things:

       (a)    permitting wrongful business practices to occur which had the effect of manipulating revenues and earnings;

       (b)    supervising inadequately the employees and managers of IAC and failing to instruct them to act with honesty and integrity in order to preserve and enhance IAC's reputation in the business community;

       ©)    recklessly exposing IAC to millions dollars of damages, including costs associated with class actions brought by shareholders of the Company for violations of federal securities laws and insider trading; and

       (d)    failing to institute legal action against those officers, directors and employees, including former officers and directors of the Company, responsible for permitting IAC to engage in the conduct complained of herein.

## DEMAND ON THE BOARD OF DIRECTORS

12

29.     Plaintiff has not made a demand on IAC's Board of Directors to pursue the claims asserted herein, because such demand is excused and would have been a futile act for the reasons set forth below:

(a)     Certain Executive Defendants personally profited from the wrongful activities alleged by selling IAC stock at artificially inflated prices;

(b)     All the Director Defendants are accused of a breach of fiduciary duties for failing to put into place adequate internal controls and adequate means of supervision to prevent the wrongful conduct complained of herein;

©)     A substantial likelihood exists that the Director Defendants did not exercise valid business judgment because the wrongful actions and/or inactions by defendants alleged herein constitute breaches of the defendants' fiduciary duties of good faith, disclosure, and loyalty to IAC and its stockholders, and an abdication of the directors' responsibilities giving rise to liability IAC,

(d)     Certain of the Executive and Director Defendants are defendants in the federal securities class action suits described above, and face a substantial likelihood of liability given the misstatements of IAC's earnings, prospects and the trading in IAC stock during the stated class period in those actions.  Accordingly, IAC's directors have disabling conflicts and could not be relied upon to reach a truly independent decision as to whether to commence action against themselves arising out of the same misconduct.

## SUBSTANTIVE ALLEGATIONS

30.     On March 19, 2003, IAC announced that it had reached an agreement to purchase all remaining outstanding shares of Expedia in a stock-for-stock agreement valued at $3.3 billion. Within one month, a similar announcement was issued relating to the complete purchase of Hotels,

13

in a stock transaction valued at $1.1 billion. By the beginning of May of 2003, Company CEO Diller indicated that these acquisitions virtually "completed the evolutionary process of simplifying out corporate structure." Going forward, he optimistically stated that the Company should be judged against such interactive behemoths as Ebay, Yahoo and Amazon.com.. In a May 1, 2003 press release, Diller stated his goal was to make IAC "the largest, most profitable interactive commerce company in the world -- by pursuing a multi-brand strategy." To this end, he touted the goal of full "transparency and clarity when it comes to financial reporting."

31.     Over the course of the ensuing months, IAC announced its quarterly financial results - including those involving Hotels and Expedia - and reiterated its commitment to accurate financial reporting. At that time, these trends were reported with the utmost positive "analysis." For example, in reporting its first quarter financial results in May of 2003, the Company viewed an earnings per share estimate of $0.16 as being indicative of 155% growth over the comparable 2002 first quarter and went on to characterize the results as "excellent." Within several days after this announcement, the Company reported that it had agreed to acquire Lending Tree, an on-line lender, in yet another stock-for-stock transaction valued at $626 to $734 million.

32.     The Company continued to report growing earnings between August of 2003 and July of 2004. For instance, in November of 2003, during an investor day conference call, the Company stated that it expected its 2004 operating income before amortization to be in the range between $1 billion and 1.2 billion, an increase of almost thirty percent. During this same period, the Company aggressively defended against any questions posed by the financial press regarding IAC's methods of doing business and the accuracy of its financial reporting to the SEC and the investing public. In particular, in response to an August 10, 2003 article in *The New York Times* which questioned

14

whether Expedia and Hotels were collecting monies as taxes without remitting the same to the applicable governmental authorities as well as the methods of IAC's financial reporting to the financial markets, Executive Defendant Khosrowshahi flatly dismissed these charges and indicated that IAC's practices were "standard in the online travel industry." Defendant Khosrowshahi also downplayed the potential adverse financial impact in the event that material disagreements erupted with various federal and state tax agencies regarding IAC's business practices. In fact, in a separate letter to the editor to *The New York Times* sent several days after *The New York Times* article, Defendant Diller discounted the issues raised by the publication, stating that the article-in-question contained "numerous inaccuracies." Diller also affirmed that "IAC has been a leader on disclosure."

33.    Between March of 2003 and early August of 2004, while the Company was issuing its positive financial results and touting its future growth prospects, there were apparently no attempts to restrain the trading of Company stock by insiders.  During this period, Executive Defendant Diller sold $4,554,000 shares of stock, grossing proceeds of $148,984,220; Director Defendant Barton sold $1,256,350 IAC shares worth $40,626,730; Executive Defendant Genachowski sold 175,833 INC shares worth $5,894,776; Director Defendant Kaufman sold 842,862 shares of INC stock for gross proceeds of $28,328,785 and Executive Defendant Severance sold 28,492 shares of INC stock, grossing $964,642.  Overall, during this period, Company insiders sold almost 7 million shares of Company stock, reaping proceeds exceeding $227.5 million.

34.    Notwithstanding the concerted "corporate happy talk" campaign by Director Defendant Diller and others, on August 3, 2004, the Company issued a press release announcing that net income for the second quarter of 2004 fell by 24% when compared to the second quarter of 2003. During a conference call with analysts on the same day, Director Defendant Diller backed off his

November 11, 2003 representation that the Company could grow 30% in the coming year and, instead, recharacterized this figure as a "stretch goal" to be reached in years to come.

35.    Based on the above-referenced adverse disclosure as well as Defendant Diller's less-than-convincing attempt to "redefine" the financial projections of the Company, IAC common stock underwent a dramatic drop in value, declining from $27.03 per share on August 3, 2004 to $22.80 per share on August 4, 2003 - a one day drop of more than 15% on uncharacteristically heavy trading.

36.    Moreover, on August 5, 2004, Director Defendant Diller sent an e-mail statement to Company employees in which he admitted that Company management had "raised expectations too high," that the Company was "now paying the price" and that the "higher truth" was that Company management had "disappoint[ed] the estimates for growth set by our own hands and by not lowering them earlier in the year as the strain became clear we mightily exacerbated the problem."

37.    On the heels of Director Defendant Diller's disclosure of the "higher truth," *The New York Post* reported in its August 22, 2004 edition that hotel operators, including InterContinental Hotels - the worlds largest hotel chain - would no longer list rooms with either Expedia or Hotels because of IAC's refusal to tell customers of room availability outside those already allocated to IAC. The article went on to state that major airlines had rebelled against Hotels and Expedia's high and unpublished booking fees and, as a result, revenues had suffered shortly after IAC had been forced to comply with airline demands to stop these practices. Moreover, a September 19, 2004 article in the Philadelphia Inquirer stated that InterContinental hotels had actually removed 3,500 hotels off of Expedia and Hotels as a result of the Company's prior refusal to disclose its service fees to customers.

16

38.     Based on the above-referenced disclosures, IAC, Diller and other Executive Defendants have now been named as parties in several federal class action lawsuits. The upshot of these lawsuits is the allegation that Diller, other Company executives and the Company itself either lied or recklessly misled the financial markets by failing to adequately disclose material information concerning the Company's methods of doing business and engaging in illegal insider trading.

39.     Notwithstanding the above-referenced disclosures, the Company has failed to take any meaningful remedial action against either the Director Defendants or Executive Defendants based on their actions (or inactions) involving the misstatements, material non-disclosures and trading activities of the above-referenced individuals. On this basis, the Company has and continues to experience on-going financial and reputational damage.

## COUNT I

### DERIVATIVE CLAIM FOR BREACH OF FIDUCIARY DUTY

40.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

41.     The Director Defendants and Executive Defendants breached their respective fiduciary duties to the Company and to its shareholders by failing in their responsibility to maintain adequate accounting controls and by employing improper accounting and audit practices and procedures, which artificially inflated the value of the Company's common stock.

42.     The Executive and Director Defendants owe and owed a fiduciary duty to IAC to supervise the issuance of its press releases and public filings to ensure that they were truthful and accurate and that they conformed with federal and state law. The Executive and Director Defendants breached their fiduciary duty by failing to properly supervise and monitor IAC's business practices,

17

by allowing misleading statements and filings to be issued and made and by allowing for illegal insider trading in the Company's common stock by the Executive Defendants.

43.    Defendants have engaged in a sustained and systematic failure to exercise their oversight responsibilities to ensure that IAC complied with Federal and State Laws, rules and regulations and to ensure the integrity of its financial reporting.

44.    As a result of defendants' breaches, IAC is the subject of securities fraud class action lawsuits by allegedly defrauded investors, has lost market share, has had its reputation in the business community tarnished and has thus been damaged.

## COUNT II

### MISAPPROPRIATION OF CONFIDENTIAL INFORMATION FOR PERSONAL PROFIT

45.    Plaintiff repeats and realleges each and every allegation set forth above.

46.    Certain defendants (the "Executive Defendants" and Defendant Director Barton), at all relevant times, occupied fiduciary positions with IAC and were privy to confidential material inside information concerning IAC and its operations.

47.    Despite their duty to IAC to refrain from trading in IAC common stock on the basis of confidential material inside information, these defendants and other members of management misappropriated such information and used it for their own personal profits by selling IAC shares into a unsuspecting market at prices far exceeding the price level of IAC shares following the public revelation of the above-mentioned wrongs.

48.    By reason of their breach of their fiduciary duty to IAC not to trade on confidential material inside information or permit other fiduciaries to do so, the Executive Defendants and

18

Director Defendant Barton should account and are liable to IAC for any and all profits unlawfully derived from such trades.

## COUNT III

### CONTRIBUTION AND INDEMNIFICATION

49.    Plaintiff repeats and realleges each and every allegation set forth above.

50.    IAC is alleged to be liable to various persons, entities and/or classes by virtue of the same facts or circumstances as are alleged herein to give rise to Executive and Director Defendants' liability to IAC.

51.    IAC's alleged liability on account of the wrongful acts and practices and related misconduct described above arises, in whole or in part, from the knowing, reckless, disloyal and/or bad faith acts or omissions of Director and/or Executive Defendants as alleged above, and IAC is entitled to contribution and indemnification from each of the Director and Executive Defendants in connection with all such claims that have been, are or may in the future be asserted against IAC by virtue of defendants' misconduct.

52.    Plaintiff has no adequate remedy at law.

WHEREFORE, plaintiff demands judgment as follows:

A.    Directing defendants to account to the Company for all damages sustained or to be sustained by the Company by reason of the wrongs alleged herein;

B.    Requiring defendants to return to IAC all salaries and the value of other remuneration of whatever kind paid to them by the Company during the time they were in breach of the fiduciary duties they owed to IAC.

C.    Directing defendants to pay interest at the highest rate allowable by law on the

19

amount of damages sustained by the Company as a result of defendants' culpable conduct;

      D.      Awarding plaintiff the costs and disbursements of this action, including reasonable

attorneys' and experts' fees and expenses; and

      E.      Granting such other and further relief as the Court may deem just and proper.

Dated: New York, NY
October 15, 2004

                              BULL & LIFSHITZ, LLP

                              By:_____
                                  Peter D. Bull
                              18 East 41st Street
                              New York, New York 10017
                              Telephone: (212) 213-6222

                              Attorneys for Plaintiff

20